UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOE JOHNSON,<br><br>    Plaintiff,<br><br>    v.<br><br>METROPOLITAN DIRECT PROPERTY<br>& CASUALTY INSURANCE CO., *et al.*,<br><br>    Defendants. | Civil Action No. 18-1715 (JEB) |

## MEMORANDUM OPINION

If truth is in the eye of the beholder, this case appears to feature very different beholders. Plaintiff Joe Johnson alleges that a car driven by Defendant Mark Johnson (no apparent relation) struck his vehicle on a District freeway and that Defendant Johnson then assaulted him and fled with another passenger, Defendant Nneka Grimes. To add insult to injury, he alleges that these two then provided an entirely different account to their insurance company, Defendant Metropolitan Direct Property & Casualty Insurance Company (MetLife). In Defendants' version, Plaintiff was the transgressor who twice struck their vehicle and himself fled the scene.

Plaintiff thus brought this *pro se* action against those three Defendants, the owner of the car, and a MetLife claims adjuster, Christian Hayman, alleging myriad causes of action, some conceivable and others less so. MetLife and Hayman now move to dismiss four counts against them for failing to state a claim and separately seek a more definite statement on two others. As Plaintiff's counts against these two Defendants are either facially deficient or in need of further clarification, the Court will grant both Motions.

1

**I.     Background**

Considering the facts alleged in the First Amended Complaint as true, as is required at this stage, the Court observes that the dispute here centers around an automobile accident on the Southeast Freeway here in Washington on November 20, 2017.  Plaintiff alleges that he was rear-ended by Defendant Johnson, who then approached Plaintiff's vehicle on foot, threatened to kill him, grabbed Plaintiff's cell phone, punched him in the face, and then fled the scene.  See Am. Compl. at 3.  An arrest warrant, he believes, was subsequently issued for Defendant Johnson.  Id.  Defendants Nneka Grimes (a passenger in the car) and Patricia Grimes (the owner of the car who was not present at the accident), meanwhile, had a fundamentally contradictory story to recount.  Plaintiff alleges that they falsely told MetLife that he was the one at fault, that his car had struck theirs on two occasions, and that he had tried unsuccessfully to flee.  Id. at 4.  MetLife and its employee, Christian Hayman, then "relied upon [these false reports] and republished them to third parties without conducting any investigation to determine [their] truth and accuracy."  Id.

Plaintiff never provides the upshot of these conflicting narratives, who was forced to pay whom for the incident, or if anyone ended up being criminally charged.  He nonetheless asserts ten causes of action against myriad Defendants: Negligence against Johnson (Count I), Assault/Battery and Intentional Infliction of Emotional Distress against Johnson (II), Defamation against Patricia and Nneka Grimes (III), Libel against the Grimeses (IV), Republication of Defamation against MetLife and Hayman (V), Republication of Libel against MetLife and Hayman (VI), Intentional Infliction of Emotional Distress against MetLife, Hayman, and the Grimeses (VII), Negligent Infliction of Emotional Distress against MetLife and Hayman (VIII), Negligent Hiring, Training & Supervision against MetLife (IX), and Civil Conspiracy against all

Defendants (X). Id. at 5-13. He asserts that he has "suffered severe bodily injuries, loss of sleep, headaches, severe mental pain, humiliation, embarrassment, [and] depression" as a result. Id., ¶ 21.

Although Plaintiff is proceeding *pro se*, he is either an attorney himself or has likely received substantial assistance from an attorney, as his pleadings are professionally presented, even if a number of claims are evanescent. The Court thus affords him some leeway as a *pro se* party but need not bend over backwards to indulge his pleadings.

MetLife and Hayman have now filed a Motion to Dismiss as to Counts VII-X and a separate Motion for More Definite Statement as to Counts V-VI.

## II. Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court "must treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). For

a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Rule 12(e) permits a defendant to move for a more definite statement if "a pleading . . . is so vague or ambiguous that the party cannot reasonably prepare a response." "[W]hen a defendant is unclear about the meaning of a particular allegation in the complaint, the proper course of action is not to move to dismiss but to move for a more definite statement." Hilska v. Jones, 217 F.R.D. 16, 21 (D.D.C. 2003) (quoting Am. Nurses' Ass'n v. Illinois, 783 F.2d 716, 725 (7th Cir. 1986)). "Normally, of course, the basis for requiring a more definite statement under Rule 12(e) is unintelligibility, not mere lack of detail." Burnett v. Al Baraka Inv. and Dev. Corp., 274 F. Supp. 2d 86, 110 (D.D.C. 2003) (internal quotation marks and citations omitted). Indeed, "a plaintiff need not allege all the facts necessary to prove its claim so long as [he] provides enough factual information to make clear the substance of that claim." Wilson v. Gov't of D.C., 269 F.R.D. 8, 12 (D.D.C. 2010) (quoting Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).

**III.    Analysis**

The Court begins with Defendants' Motion for More Definite Statement as to Counts V-VI and then addresses their Motion to Dismiss as to Counts VII-X.

A. Motion for More Definite Statement

Counts V (Republication of Defamation) and VI (Republication of Libel) are essentially identical. The former alleges that "[o]n or around January 30, 2018, Defendant, MetLife, by and through its agent, employee and servant, Defendant, Hayman, republished unprivileged false statements of fact in the District of Columbia to third parties, both known and unknown, to the

4

effect" that Plaintiff was at fault in the accident. See Am. Compl., ¶ 35. "Defendants either knew that the statements were false or conducted no investigation concerning the truth or veracity of the defamatory statements with the sole purpose of impugning Plaintiff." Id., ¶ 38. The latter count is more cursory, simply incorporating the former and repeating that Defendants "republished or caused to be republished unprivileged false statements of fact in the District of Columbia . . . either negligently or knowing full well that they were false . . . in bad faith for the sole purpose of injuring the Plaintiff." Id., ¶¶ 42-44.

In seeking a more definite statement, Defendants correctly point out that such allegations are hardly specific enough for a defamation claim. To begin, there is no allegation of the form or forum in which these statements were published; we know only the general content of the statement. Equally absent is any identification of the listener beyond "third parties, both known and unknown." Id., ¶ 35. These two signal omissions are sufficient to warrant amendment. As this Court has explained, "Defamation under D.C. law requires a plaintiff to show a defamatory statement, publication to a third party, negligence, and either that the statement is actionable as a matter of law or that publication caused the plaintiff special harm." Kenley v. Dist. of Columbia, 83 F. Supp. 3d 20, 48 (D.D.C. 2015) (internal quotation marks and citation omitted). Publication, moreover "requires making a statement to at least one other person." Westfahl v. Dist. of Columbia, 75 F. Supp. 3d 365, 375 (D.D.C. 2014) (citing Charlton v. Mond, 987 A.2d 436, 438 n.4 (D.C. 2010); Von Kahl v. Bureau of Nat'l Affairs, Inc., 934 F. Supp. 2d 204, 218–19 (D.D.C. 2013)).

If Plaintiff decides to amend his Complaint, he must therefore specifically allege the form of the statement – *e.g.*, email, letter, conversation – and he must state at least generally to whom the statement was published. Finally, the Court does not understand his distinction between

"Republication of Defamation" and "Republication of Libel." Libel is a written form of defamation, and slander is an oral form, but there is no basis to assert claims for both libel and defamation. If Plaintiff wishes to assert two separate counts, he must explain the difference.

    B.  <u>Motion to Dismiss</u>

As the Motion to Dismiss covers four separate counts, the Court treats them sequentially.

        1.  *Intentional Infliction of Emotional Distress (Count VII)*

Johnson's allegations relating to his IIED count are rather strained. He claims that Defendants "knew . . . [the other Defendants'] report was false or conducted no investigation concerning the truth or veracity of the report." Am. Compl., ¶ 49. They thus "intentionally caused injury to the Plaintiff by making reports that they knew were false in an effort to have the Plaintiff indicted and punished for fleeing the scene of an accident." Id., ¶ 50. There are no allegations about to whom Defendants sent the report or what happened to Plaintiff thereafter – except for this aside about an indictment, which does not appear in the statement of facts. At bottom, then, the claim is that Defendants were negligent in accepting other Defendants' version of the accident. That does not even approach the standard for IIED.

"The elements of IIED are (1) extreme or outrageous conduct [that] (2) intentionally or recklessly causes (3) severe emotional distress to another." <u>Nagy v. Corrections Corp. of Am.</u>, 79 F. Supp. 3d 114, 120 (D.D.C. 2015) (internal quotation marks and citation omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (internal quotation marks and citation omitted); see <u>Amobi v. Dist. of Columbia Dep't of Corrections</u>, 755 F.3d 980, 995 (D.C. Cir. 2014) (defining such conduct as going "beyond all possible bounds of decency, and to be regarded as atrocious and utterly

intolerable in a civilized community") (citation omitted).  It is pellucid that Johnson has not cleared the bar.

Plaintiff nonetheless contends that IIED may exist where a party files a false police report.  See Pl. MTD Opp. at 4.  Even if such a principle extended to insurance reports, these Defendants engaged in no such action; on the contrary, they merely accepted a report that Johnson contends was not true.  As there is a world of difference between these two acts, this count will be dismissed.

2.  *Negligent Infliction of Emotional Distress (Count VIII)*

To prevail on an NIED claim, conversely, Plaintiff "must prove (1) that [Defendant] acted negligently, (2) that [he] suffered either a physical impact or [was] within the 'zone of danger' of the [Defendants'] actions, and (3) that [he] suffered emotional distress that was 'serious and verifiable.'"  Wright v. United States, 963 F. Supp. 7, 18 (D.D.C. 1997) (quoting Jones v. Howard University, Inc., 589 A.2d 419, 424 (D.C. 1991)); see also Asare v. LM-DC Hotel, LLC, 62 F. Supp. 3d 30, 34–35 (D.D.C. 2014) ("Negligent infliction, first, is a cause of action based on physical harm, and although '[a] plaintiff need not show actual physical impact' to prove that a defendant negligently caused her distress, 'she must show that she actually feared for her [physical] safety as a result of [the defendant's] conduct.'") (quoting Hollis v. Rosa Mexicano DC, LLC, 582 F. Supp. 2d 22, 27 (D.D.C. 2008)).

Plaintiff here makes no allegation that he suffered any kind of direct physical injury from these Defendants' actions, even though he might have been struck by other Defendants.  Nor is there any real allegation that he stood within any zone of danger of these Defendants' actions.  Instead, he argues that an exception to the injury/danger-zone requirement exists when there is a "special relationship" between the parties.  See Pl. MTD Opp. at 5 (citing Hedgepeth v. Whitman

7

Walker Clinic, 22 A.3d 789, 810-11 (D.C. 2011) (*en banc*)). He is correct inasmuch as "a plaintiff may recover for negligent infliction of emotional distress if the plaintiff can show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." Hedgpeth, 22 A.3d at 810-11.

Hedgepeth involved an HIV misdiagnosis by a medical clinic, and the D.C.C.A. found that "a doctor's breach of duty in misdiagnosing a patient with HIV-infection would result in serious emotional harm." Id. at 820. No such special relationship can be said to exist between an individual and another person's automobile insurer. Indeed, Johnson never even argues the point, merely positing that Defendant must rebut his theory. The NIED claim thus founders as a matter of law.

### 3. *Negligent Hiring, Supervision & Training (Count IX)*

Next up is Johnson's cause of action for MetLife's negligent hiring, supervision, and training of Hayman. To state such a claim, a "plaintiff must allege facts showing that the employer knew or should have known that the employee was incompetent, and that the employer, despite this actual or constructive knowledge, [hired or] failed to adequately supervise the employee." Stevens v. Sodexo, Inc., 846 F. Supp. 2d 119, 128 (D.D.C. 2012); see also Thorp v. Dist. of Columbia, 319 F. Supp. 3d 1, 21 (D.D.C. 2018) ("To prevail on either claim, a plaintiff must show an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.") (internal citation and

quotation marks omitted); Rawlings v. Dist. of Columbia, 820 F. Supp. 2d 92, 115 (D.D.C. 2011) ("Plaintiff must show . . . that [Defendant] engaged in behavior before the [incident here] that should have put his employer on notice that he required additional training.").

Once again, Johnson comes up short given that he has alleged no facts regarding Hayman's behavior that should have put the company on notice that he should not have been hired or should have been supervised more closely or trained more extensively. Instead, Plaintiff appears to believe that any negligent act by an employee can give rise to this cause of action, when what is actually required is prior notice. See Pl. MTD Opp. at 8. This count also falls by the wayside.

    4. *Civil Conspiracy*

In his final cause of action – for civil conspiracy – Johnson alleges that "Defendants and John Does 1 and 2 entered into an agreement to commit tortious acts including defamation, libel and intentional infliction of emotional distress against the Plaintiff." Am. Compl., ¶ 61. In the District of Columbia, "[t]o establish a *prima facie* case of civil conspiracy, [a plaintiff] ha[s] to prove (1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme." McMullen v. Synchrony Bank, 164 F. Supp. 3d 77, 96-97 (D.D.C. 2016) (citations and internal quotations marks omitted).

It is entirely unclear why, with five current Defendants, Plaintiff feels the need to add more in the guise of Does. Who these Does are, what position(s) they hold, and what they could have done are not illuminated in the Complaint. The broad allegation that all Defendants plus two unknown individuals somehow entered into this agreement to harm Plaintiff does not sufficiently put Defendants on notice of who actually agreed to what. The Court, however, will

9

give Plaintiff another opportunity to state this claim with more specificity to see if he can sufficiently allege an actual conspiracy.

## IV. Conclusion

The Court, accordingly, will grant Defendants' Motion for More Definite Statement and require Plaintiff to file an Amended Complaint if he wishes to proceed with a defamation claim against these Defendants. In addition, it will grant their Motion to Dismiss, but give leave for Johnson to amend his Civil Conspiracy claim. A separate Order so stating will issue this day.

.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 15, 2018